**TOSTRUD LAW GROUP, P.C.**
JON A. TOSTRUD
1925 Century Park East
Suite 2100
Los Angeles, CA 90067
Telephone: (310) 278-2600
Facsimile: (310) 278-2640
Email: jtostrud@tostrudlaw.com

**GAINEY McKENNA & EGLESTON**
THOMAS J. MCKENNA
GREGORY M. EGLESTON
440 Park Avenue South, 5th Floor
New York, New York 10016
Tel: (212) 983-1300
Fax: (212) 983-0383
Email: tjmckenna@gme-law.com
Email: gegleston@gme-law.com

*Attorneys for Plaintiff*

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| DENNIS E. EMOND, Derivatively on Behalf of IZEA WORLDWIDE, INC., <br><br> Plaintiff, <br><br> v. <br><br> EDWARD H. MURPHY, RYAN S. SCHRAM, BRIAN W. BRADY, JOHN H. CARON, LINDSAY A. GARDNER, JILL M. GOLDER, and DANIEL R. RUA, <br><br> Defendants, <br><br> and, <br><br> IZEA WORLDWIDE, INC., <br><br> Nominal Defendant. | Case No. 2:18-cv-9040 <br><br><br> **STIPULATION AND AGREEMENT OF SETTLEMENT** |

This Stipulation and Agreement of Settlement (the "Stipulation"), dated March 6, 2019, is made and entered into by and among the following Parties (as defined herein), each by and

through their respective counsel: (i) Dennis E. Emond ("Emond"), plaintiff to the above-captioned shareholder derivative action (the "Action") filed derivatively on behalf of IZEA Worldwide, Inc. f/k/a IZEA, Inc. ("IZEA" or the "Company"); (ii) Korene Stuart ("Stuart," and together with Emond, the "Plaintiffs"), plaintiff to the shareholder derivative action filed derivatively on behalf of IZEA pending in the Eighth Judicial District Court of the State of Nevada, Clark County (the "Nevada State Court"), captioned *Stuart v. Murphy, et al.*, Case No. A-18-777135-C (the "Nevada State Action," and together with the Action, the "Derivative Actions"); (iii) nominal defendant IZEA; and (iv) defendants Edward H. Murphy, LeAnn C. Hitchcock, Ryan S. Schram, Brian W. Brady, John H. Caron, Lindsay A. Gardner, Jill M. Golder and Daniel R. Rua (collectively the "Individual Defendants," and together with IZEA, the "Defendants").   This Stipulation, subject to the approval of the United States District Court for the Central District of California (the "Court"), is intended by the Parties to fully, finally, and forever compromise, resolve, discharge, and settle the Released Claims (as defined herein) and to result in the complete dismissal of the Derivative Actions with prejudice, upon the terms and subject to the conditions set forth herein, and without any admission or concession as to the merits of any of the Parties' claims or defenses.

## I.    INTRODUCTION

### A.  Factual Background

IZEA is a Nevada corporation with its principal executive offices in Winter Park, Florida. Plaintiffs allege in the Derivative Actions that the Individual Defendants made and/or caused the Company to willfully or recklessly make false and misleading statements of material fact to the investing public that failed to disclose that: (1) the Company was improperly reporting revenue from its Content Workflow services as gross amounts billed to marketers instead of reporting Content Workflow revenue on a net transaction basis; (2) the amounts previously reported as

gross profit on Content Workflow should have been the amount reported as revenue; (3) the Company failed to include the cost of relevant internal personnel in reporting the cost of revenue related to Managed Services; and (4) the Company failed to maintain internal controls.

### B. Procedural Background

On July 3, 2018, Plaintiff Stuart filed the Nevada State Action in the Nevada State Court, captioned *Stuart v. Murphy, et al.*, Case No. A-18-777135-C, derivatively on behalf of IZEA against the Individual Defendants, asserting claims for breach of fiduciary duty, unjust enrichment, abuse of control, gross mismanagement, and waste of corporate assets.

On August 20, 2018, Plaintiff Stuart filed a stipulation staying the Nevada State Action pending an order sustaining all or part of the operative complaint filed in the related federal securities fraud class action filed in the United States District Court for the Central District of California, captioned *Perez v. Izea, Inc., et al.*, Case No. 2:18-cv-02784 (the "Securities Class Action"), or the dismissal of the Securities Class Action in its entirety with prejudice.

On October 19, 2018, Plaintiff Emond filed the Action in this Court, captioned *Emond v. Murphy, et al.*, Case No: 2:18-cv-9040, derivatively on behalf of IZEA against the Individual Defendants except for Defendant Leann C. Hitchcock, alleging claims for breach of fiduciary duty and gross mismanagement.

On October 31, 2018, plaintiff Emond filed a first amended complaint in the Action, alleging claims for breach of fiduciary duty, gross mismanagement, and claims for violations of the Securities Exchange Act of 1934.

On November 13, 2018, the Court entered an order in the Action extending IZEA's time to answer or otherwise respond to Plaintiff Emond's first amended complaint to January 5, 2019.

On December 26, 2018, the Court entered an order in the Action extending the defendants' and IZEA's time to answer or otherwise respond to Plaintiff Emond's first amended

complaint to March 6, 2019.

### C. Settlement Negotiations

On September 10, 2018, counsel for Plaintiff Stuart sent a settlement demand and extensive corporate governance reforms proposal to Defendants' Counsel (as defined below) in order to settle the Nevada State Action.

On September 24, 2018, Defendants' Counsel and counsel for Plaintiff Stuart participated in a day-long mediation in Irvine, California (the "Mediation"), which was presided over by Gregory P. Lindstrom, Esq. of Phillips ADR (the "Mediator"). The Mediation did not result in a resolution of the Nevada State Action.

Subsequent to the Mediation, Defendants' Counsel and counsel for Plaintiff Stuart continued to negotiate the terms of the settlement with the assistance of the Mediator until December 18, 2018, at which date all of the Parties agreed in principle to the material terms of the settlement of the Derivative Actions. As consideration for the Settlement (as defined below), IZEA will institute certain corporate governance reforms, the terms of which are fully set forth in Exhibit A attached hereto (the "Reforms"), and IZEA shall maintain the Reforms for no less than five (5) years or until a majority of the independent directors vote to change any of the modifications or reforms, whichever is sooner.

Only after agreeing in principle to the material terms of the Settlement did Defendants' Counsel and counsel for Plaintiff Stuart begin to negotiate, with the assistance of the Mediator, the attorney's fees and expenses to be paid to Plaintiffs' Counsel. On February 26, 2019, Defendants agreed to cause their insurers to pay three hundred thousand dollars ($300,000.00) to Plaintiffs' Counsel in the Derivative Actions for their attorneys' fees and expenses (the "Fee and Expense Award"), in light of the substantial benefit that will be conferred upon the Company and its stockholders by the Reforms as a result of the settlement of the Derivative Actions, subject to

Court approval.

The terms of the settlement of the Derivative Actions are reflected in this Stipulation (the "Settlement").

The Settlement provides for certain confirmatory discovery to verify the reasonableness and adequacy of the Settlement. Plaintiffs' Counsel intends to review the confirmatory discovery prior to seeking the Court's final approval of the Settlement at the Settlement Hearing (defined below).

The independent directors of IZEA's Board of Directors, in exercising their business judgment, approved the Settlement and each of its terms, as set forth in this Stipulation, as in the best interest of IZEA.

## II. PLAINTIFFS' COUNSEL'S INVESTIGATION AND RESEARCH, PLAINTIFFS' CLAIMS, AND THE SUBSTANTIAL BENEFIT OF SETTLEMENT

Plaintiffs' Counsel (as defined below) conducted investigations relating to the claims and the underlying events alleged in the Derivative Actions, which included, but are not limited to: (1) reviewing and analyzing the Company's public filings with the Securities and Exchange Commission ("SEC"), press releases, announcements, and news articles; (2) reviewing and analyzing the allegations in the complaint filed in the Securities Class Action; (3) researching and drafting the respective shareholder derivative complaints filed in the Derivative Actions; (4) researching the applicable law with respect to the claims in the Derivative Actions and the potential defenses thereto; (5) researching corporate governance issues; (6) preparing corporate governance reforms proposals; (7) preparing a mediation statement in advance of the Mediation and attending the all-day Mediation; and (8) engaging in extensive settlement negotiations with Defendants' Counsel.

Plaintiffs' Counsel believe that the claims asserted in the Derivative Actions have merit and that their investigations support the claims asserted. Without conceding the merit of any of

Defendants' defenses or the lack of merit of any of their own allegations, and in light of the substantial benefit of the Settlement, as well as to avoid the potentially protracted time, expense, and uncertainty associated with continued litigation, including potential trials and appeals, Plaintiffs have concluded that it is desirable that the Derivative Actions be fully and finally settled in the manner, and upon the terms and conditions, set forth in this Stipulation.  Plaintiffs and Plaintiffs' Counsel recognize the significant risk, expense, and length of continued proceedings necessary to prosecute the Derivative Actions against the Individual Defendants through trials and possible appeals.  Plaintiffs' Counsel also have taken into account the uncertain outcome and the risk of any litigation, especially complex litigation such as the Derivative Actions, as well as the difficulties and delays inherent in such litigation.  Based on their evaluation, and in light of the substantial benefit conferred upon the Company and its stockholders as a result of the Settlement, Plaintiffs and Plaintiffs' Counsel have determined that the Settlement is in the best interests of Plaintiffs, IZEA, and Current IZEA Stockholders (as defined below), and have agreed to settle the Derivative Actions upon the terms, and subject to the conditions, set forth herein.

**III.    DEFENDANTS' DENIALS OF WRONGDOING AND LIABILITY**

The Individual Defendants have denied, and continue to deny, each and every claim and contention alleged by Plaintiffs in the Derivative Actions and affirm that they have acted properly, lawfully, and in full accord with their fiduciary duties, at all times.  Further, the Individual Defendants have denied expressly, and continue to deny, all allegations of wrongdoing, fault, liability, or damage against them arising out of any of the conduct, statements, acts or omissions alleged, or that could have been alleged, in the Derivative Actions and deny that they have ever committed or attempted to commit any violations of law, any breach of fiduciary duty owed to IZEA or its stockholders, or any wrongdoing whatsoever.  The Individual Defendants further deny that IZEA has suffered any damage, injury or other harm as a result of

any action or inaction on their part.  Had the terms of this Stipulation not been reached, the Individual Defendants would have continued to contest vigorously Plaintiffs' allegations, and the Individual Defendants maintain that they had and have meritorious defenses to all claims alleged in the Derivative Actions.  Yet, IZEA acknowledges and agrees that the Reforms confer a substantial benefit upon the Company and its stockholders.  Without admitting the validity of any of the claims that Plaintiffs have asserted in the Derivative Actions, or any liability with respect thereto, the Defendants have concluded that the Settlement is in the best interest of IZEA and accordingly have determined that it is desirable that the claims be settled on the terms and subject to the conditions set forth herein.

## IV.    TERMS OF STIPULATION AND AGREEMENT OF SETTLEMENT

Plaintiffs, derivatively on behalf of IZEA, and the Defendants, by and through their respective counsel or attorneys of record, hereby stipulate and agree that, subject to approval by the Court, in consideration of the substantial benefit flowing to the Parties, the Derivative Actions and all of the Released Claims (as defined below) shall be fully, finally, and forever satisfied, compromised, settled, released, discharged, and dismissed with prejudice, upon the terms and subject to the conditions set forth herein as follows:

### 1.  **Definitions**

As used in this Stipulation, the following terms have the meanings specified below.  In the event of any inconsistency between any definition set forth below and any definition set forth in any document attached as an exhibit to this Stipulation, the definitions set forth below shall control.

1.1    "Action" means the shareholder derivative action pending in this Court, captioned *Emond v. Murphy, et al.*, Case No. 2:18-cv-9040.

1.2    "Board" means the IZEA Board of Directors.

1.3 "IZEA" or the "Company" means nominal defendant IZEA Worldwide, Inc. f/k/a IZEA, Inc., and includes all of its subsidiaries, predecessors, successors, affiliates, officers, directors, employees, and agents.

1.4 "Claims" means, collectively, any and all claims, rights, demands, causes of action or liabilities or obligations of any kind, nature and character (including but not limited to claims for damages, interest, attorneys' fees, expert or consulting fees, and any and all other costs, expenses or liabilities whatsoever), whether based on federal, state, local, statutory or common law or any other law, rule or regulation, whether foreign or domestic, whether fixed or contingent, accrued or unaccrued, disclosed or undisclosed, apparent or unapparent, liquidated or unliquidated, at law or in equity, matured or unmatured, including Unknown Claims (defined below).

1.5 "Court" means the United States District Court for the Central District of California.

1.6 "Current IZEA Stockholders" means, for purposes of this Stipulation, any Persons who own IZEA common stock as of the date of this Stipulation and who continue to hold their IZEA common stock as of the date of the Settlement Hearing, excluding the Individual Defendants, the officers and directors of IZEA, members of their immediate families, and their legal representatives, heirs, successors, or assigns, and any entity in which Individual Defendants have or had a controlling interest.

1.7 "Defendants" means, collectively, the Individual Defendants and nominal defendant IZEA.

1.8    "Defendants' Counsel" means K&L Gates LLP, 10100 Santa Monica Boulevard, Eighth Floor, Los Angeles, California 90067 and 70 West Madison Street, Suite 3300, Chicago, Illinois 60602.

1.9    "Defendants' Released Claims" means all Claims that could be asserted in any forum by the Released Persons against Plaintiffs, and Plaintiffs' Counsel, and all Current IZEA Stockholders (solely in their capacity as IZEA stockholders) (including known and Unknown Claims brought directly), arising out of, relating to, or in connection with the institution, prosecution, assertion, settlement, or resolution of the Derivative Actions or the Released Claims; provided, however, that nothing herein shall in any way release, waive, impair, or restrict the rights of any Party to enforce the terms of this Settlement.

1.10   "Derivative Actions" means the Action and the Nevada State Action.

1.11   "Effective Date" means the first date by which all of the events and conditions specified in Section IV, ¶ 6.1 herein have been met and have occurred.

1.12   "Fee and Expense Award" means the sum to be paid to Plaintiffs' Counsel for their attorneys' fees and expenses, as detailed in Section IV, ¶¶ 5.1-5.2 herein, subject to approval by the Court.

1.13   "Final," with respect to the Judgment (defined below), means the time when (1) either no appeal or petition for review by writ has been filed and the time has passed for any notice of appeal or writ petition to be timely filed in the Action; or (2) an appeal has been filed and the court of appeals has either affirmed the order or judgment or dismissed that appeal and the time for any reconsideration or further appellate review has passed; or (3) a higher court has granted further appellate review, and that court has either affirmed the underlying order or

judgment or affirmed the court of appeals' decision affirming the order or judgment or dismissing the appeal or writ proceeding.

1.14   "Individual Defendants" means, collectively, Edward H. Murphy, LeAnn C. Hitchcock, Ryan S. Schram, Brian W. Brady, John H. Caron, Lindsay A. Gardner, Jill M. Golder, and Daniel R. Rua.

1.15   "Judgment" means the final order and judgment to be rendered by the Court, substantially in the form attached hereto as Exhibit D.

1.16   "Nevada State Action" means the shareholder derivative action pending in the Nevada State Court, captioned *Stuart v. Murphy, et al.*, Case No. A-18-777135-C.

1.17   "Nevada State Court" means the Eighth Judicial District Court of the State of Nevada, Clark County.

1.18   "Notice to Current IZEA Stockholders" or "Notice" means the notice to Current IZEA Stockholders of the Settlement, substantially in the form of Exhibit B attached hereto.

1.19   "Parties" means, collectively, Plaintiffs and Defendants.

1.20   "Person(s)" means an individual, corporation, limited liability company, professional corporation, partnership, limited partnership, limited liability partnership, association, joint stock company, estate, legal representative, trust, unincorporated association, government or any political subdivision or agency thereof, and any business or legal entity, and their spouses, heirs, predecessors, successors, administrators, parents, subsidiaries, affiliates, representatives, or assignees.

1.21   "Plaintiffs" means Dennis E. Emond and Korene Stuart.

1.22  "Plaintiffs' Counsel" means, collectively: (1) Gainey McKenna & Egleston, 440 Park Avenue South, 5th Floor, New York, New York 10016; and (2) The Brown Law Firm, P.C., 240 Townsend Square, Oyster Bay, New York 11771.

1.23  "Preliminary Approval Order" means the order to be entered by the Court, substantially in the form of Exhibit C attached hereto, that, *inter alia*, preliminarily approves the terms and conditions of the Settlement as set forth in this Stipulation, directs that the Notice be provided to Current IZEA Stockholders, and schedules the Settlement Hearing in order to consider whether the Settlement and Fee and Expense Award should be finally approved.

1.24  "Related Persons" means each and all of a Person's past, present, or future family members, spouses, domestic partners, parents, associates, affiliates, subsidiaries, officers, directors, stockholders, owners, members, representatives, employees, attorneys, financial or investment advisors, consultants, underwriters, investment banks or bankers, commercial bankers, insurers, reinsurers, excess insurers, co-insurers, advisors, principals, agents, heirs, executors, trustees, estates, beneficiaries, distributees, foundations, general or limited partners or partnerships, joint ventures, personal or legal representatives, administrators, or any other person or entity acting or purporting to act for or on behalf of any Person, and each of their respective predecessors, successors, and assigns.

1.25  "Released Claims" means all Claims, including known and Unknown Claims (defined below), of every nature and description whatsoever, known or unknown, against any of the Released Persons (defined below) that (i) were or would have been asserted derivatively in the Derivative Actions; (ii) would have been barred by *res judicata* had the Derivative Actions been fully litigated to final judgment; or

(iii) that could have been, or in the future can or might be, asserted derivatively in any forum, tribunal or proceeding or otherwise against any of the Released Persons that concern, arise out of or relate in any way to any of the allegations, transactions, facts, occurrences, representations, statements, or omissions, or failures to act alleged, involved, set forth, or referred to in the operative complaints filed in the Derivative Actions, including any derivative claim any Current IZEA Stockholder might have or could have brought in the event that any Individual Defendant brings a claim for indemnification against IZEA for any costs of defense or judgment that could incur in connection with the Derivative Actions or the Securities Class Action; provided, however, that nothing herein shall in any way release, waive, impair, or restrict the rights of any Party to enforce the terms of this Settlement.

1.26   "Released Person(s)" means, collectively, each and all of the Defendants and their Related Persons.

1.27   "Securities Class Action" means the federal securities class action filed in this Court, captioned *Perez v. IZEA, Inc., et al.*, Case No. 2:18-cv-02784.

1.28   "Settlement" means the settlement of the Derivative Actions as documented in this Stipulation.

1.29   "Settlement Hearing" means the hearing by the Court to review the adequacy, fairness, and reasonableness of the Settlement set forth in this Stipulation and to determine: (i) whether to enter the Judgment; and (ii) all other matters properly before the Court.

1.30   "Stipulation" means this Stipulation and Agreement of Settlement, dated March 6, 2019.

1.31 "Unknown Claims" means any Claims that Plaintiffs, IZEA or any Current IZEA Stockholder (claiming in the right of, or on behalf of, the Company) does not know or suspect to exist in his, her, or its favor at the time of the release of the Released Persons that, if known by him, her, or it, might have affected his, her, or its settlement with and release of the Released Persons, or might have affected his, her, or its decision not to object to this Settlement. Unknown Claims include those Claims in which some or all of the facts comprising the Claim may be unsuspected, or even undisclosed or hidden. With respect to any and all Released Claims, including Unknown Claims, the Parties stipulate and agree that, upon the Effective Date, they shall expressly waive, and every Current IZEA Stockholder shall be deemed to have, and by operation of the Judgment shall have, expressly waived the provisions, rights, and benefits of California Civil Code § 1542, which provides:

**A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM OR HER MUST HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR.**

The Parties shall expressly waive, and every Current IZEA Stockholder shall be deemed to have, and by operation of the Judgment shall have, expressly waived any and all provisions, rights, and benefits conferred by any law of any state or territory of the United States, or principle of common law or foreign law, which is similar, comparable or equivalent in effect to California Civil Code § 1542. Plaintiffs, IZEA, and any Current IZEA Stockholders may hereafter discover facts in addition to or different from those which he, she, or it now knows or believes to be true with respect to the subject matter of the Released Claims, but the Parties

shall expressly have, and every Current IZEA Stockholder shall be deemed to have, and by operation of the Judgment shall have, fully, finally, and forever settled and released any and all Released Claims, known or unknown, suspected or unsuspected, contingent or non-contingent, whether or not concealed or hidden, which now exist, or heretofore have existed, upon any theory of law or equity now existing or coming into existence in the future, including, but not limited to, conduct which is negligent, reckless, intentional, with or without malice, or a breach of any duty, law or rule, without regard to the subsequent discovery or existence of such different or additional facts. The Parties acknowledge, and every Current IZEA Stockholder shall be deemed by operation of the Judgment to have acknowledged, that the foregoing waivers were separately bargained for and a key element of the Settlement of which this release is a material and essential part.

**2.  Terms of the Settlement**

2.1    The benefit of the Settlement consists of the Reforms, the terms of which are fully set forth in Exhibit A attached hereto.  IZEA and its Board acknowledge and agree that the filing, pendency, and settlement of the Derivative Actions was a precipitating and material factor in the Board's adoption, implementation, and/or maintenance of the Reforms, and that the Reforms confer a substantial benefit upon IZEA and IZEA stockholders.

2.2    IZEA shall adopt the Reforms no later than forty-five (45) days from the date that the Court enters the Judgment and shall maintain the Reforms for no less than five (5) years or until a majority of the independent directors vote to change any of the modifications or Reforms, whichever is sooner.

### 3. <u>Procedure for Implementing the Settlement</u>

3.1     Promptly after execution of this Stipulation, Plaintiffs shall submit this Stipulation, together with its exhibits, to the Court and apply for entry of the Preliminary Approval Order in this Court, substantially in the form of Exhibit C attached hereto, requesting, *inter alia*: (i) preliminary approval of the Settlement set forth in this Stipulation; (ii) approval of the method of providing notice of the proposed Settlement to Current IZEA Stockholders; (iii) approval of the form of Notice substantially in the form of Exhibit B attached hereto; and (iv) a date for the Settlement Hearing.

3.2     IZEA shall undertake the administrative responsibility for giving notice of the Settlement to Current IZEA Stockholders in the manner authorized by the Court.  IZEA shall be solely responsible for paying the costs and expenses related to providing such Notice or any notice that is required by the Court.  Within ten (10) calendar days after the Court's entry of the Preliminary Approval Order, IZEA shall cause notice that settlement has been reached to be filed with the SEC through a Form 8-K, and IZEA shall publish, and maintain publication through the date of the Settlement Hearing, the Notice and this Stipulation on an internet page that IZEA shall create for this purpose, which shall be accessible via a link on the "Investor Relations" page of IZEA's website, the address of which shall be contained in the Notice.  The Parties believe the content of the Notice and the manner of the notice procedures set forth in this paragraph constitute adequate and reasonable notice to Current IZEA Stockholders pursuant to applicable law and due process.

3.3     Plaintiffs shall request that the Court hold the Settlement Hearing at least forty-five (45) calendar days after the deadline to provide notice of the Settlement described in Section IV, ¶ 3.2 above to Current IZEA Stockholders to approve the Settlement and the Fee and Expense Award.

3.4     Pending the Court's determination as to final approval of the Settlement, Plaintiffs and Plaintiffs' Counsel, and any Current IZEA Stockholders, derivatively on behalf of IZEA, are barred and enjoined from commencing, prosecuting, instigating, or in any way participating in the commencement or prosecution of any action asserting any Released Claims against any of the Released Persons in any court or tribunal.

3.5     Within ten (10) calendar days after the Court's entry of the Preliminary Approval Order, IZEA shall provide to Plaintiffs' Counsel certain confirmatory discovery to verify the reasonableness and adequacy of the Settlement, to be coordinated with any discovery required for settlement of the Securities Class Action.

3.6     Within fourteen (14) calendar days after the date that the Judgment becomes Final, the parties to the Nevada State Action shall jointly apply to the Nevada State Court to dismiss the Nevada State Action with prejudice.

**4.  Releases**

4.1     Upon the Effective Date, IZEA, Plaintiffs, and each of IZEA's current stockholders shall be deemed to have, and by operation of the Judgment shall have, fully, finally, and forever released, relinquished, and discharged the Released Claims against the Released Persons.  IZEA, Plaintiffs, and each of IZEA's current stockholders shall be deemed to have, and by operation of the Judgment shall have, covenanted not to sue any Released Person with respect to any Released Claims, and shall be permanently barred and enjoined from instituting, commencing, continuing, filing or otherwise prosecuting the Released Claims against the Released Persons except to enforce the releases and other terms and conditions contained in this Stipulation and/or the Judgment entered pursuant thereto.

4.2     Upon the Effective Date, each of the Released Persons shall be deemed to have, and by operation of the Judgment shall have, fully, finally, and forever released, relinquished and

discharged each and all of Plaintiffs and their beneficiaries, Plaintiffs' Counsel, and all current IZEA stockholders (solely in their capacity as IZEA stockholders) from the Defendants' Released Claims. The Released Persons shall be deemed to have, and by operation of the Judgment shall have, covenanted not to sue Plaintiffs or their beneficiaries, Plaintiffs' Counsel, or any current IZEA stockholders (solely in their capacity as IZEA stockholders) with respect to any Defendants' Released Claims, and shall be permanently barred and enjoined from instituting, commencing or prosecuting Defendants' Released Claims against all of Plaintiffs and their beneficiaries, Plaintiffs' Counsel, and all current IZEA stockholders (solely in their capacity as IZEA stockholders) except to enforce the releases and other terms and conditions contained in this Stipulation and/or the Judgment entered pursuant thereto.

4.3     Nothing herein shall in any way release, waive, impair, or restrict the rights of any of the Parties to enforce the terms of the Stipulation.

**5.   Plaintiffs' Counsel's Attorneys' Fees and Expenses**

5.1     In recognition of the substantial benefit provided to IZEA and Current IZEA Stockholders due to the Reforms, the Defendants shall cause their insurers to pay to Plaintiffs' Counsel the Fee and Expense Award in the amount of three hundred thousand dollars ($300,000.00), subject to the Court's approval, and Plaintiffs' Counsel shall seek the Court's approval for the Fee and Expense Award in the amount of three hundred thousand dollars ($300,000.00).  Such Fee and Expense Award shall cover all fees and expenses for all Plaintiffs' Counsel in the Derivative Actions.  The Parties agree that the Fee and Expense Award is fair and reasonable in light of the substantial benefit conferred upon IZEA and Current IZEA Stockholders by the Reforms.

5.2     The Defendants shall cause their insurers to pay the Fee and Expense Award to the escrow account of The Brown Law Firm, P.C. (the "Escrow Account"), counsel for Plaintiff

Stuart, within twenty (20) business days of the Court's entering the Preliminary Approval Order and transmission to Defendants' Counsel of payee information for the Escrow Account, including the tax identification number, Form W-9, or other information that may be required by the insurers. The Defendants' insurers shall cause such payment to be made via bank wire or check payable to the Escrow Account.  Defendants' Counsel shall have no responsibility for, nor bear any risk or liability with respect to, the Escrow Account, its operation, and any taxes or expenses incurred in connection with the Escrow Account.  Plaintiffs' Counsel shall be solely responsible for any administrative costs associated with the Escrow Account as well as the filing of all informational and other tax returns with the Internal Revenue Service, or any other state or local taxing authority, as may be necessary or appropriate.

5.3     The Fee and Expense Award shall remain in the Escrow Account until the entry of an order approving the Fee and Expense Award, at which time the Fee and Expense Award shall be immediately releasable to Plaintiffs' Counsel, notwithstanding the existence of any timely filed objections thereto or potential for appeal therefrom, or collateral attack on the settlement or any part thereof.  Should the Court order the payment of attorneys' fees and expenses to Plaintiffs' Counsel in an amount less than the agreed Fee and Expense Award prior to, or at the time of, entry of the Judgment, then only the Court-approved amount shall be released to Plaintiffs' Counsel. Any amounts remaining in the Escrow Account shall be returned to the Defendants' insurers within twenty (20) calendar days of entry of the Judgment or a final judgment after any appeal is concluded.

5.4     Payment of the Fee and Expense Award in the amount approved by the Court shall constitute final and complete payment for Plaintiffs' Counsel's attorneys' fees and expenses that have been incurred or will be incurred in connection with the filing and prosecution of the Derivative Actions and the resolution of the claims alleged therein.  Defendants and Defendants'

Counsel shall have no responsibility for the allocation or distribution of the Fee and Expense Award amongst Plaintiffs' Counsel.  Defendants shall have no obligation to make any payment to any Plaintiffs' Counsel other than the payment to the Escrow Account provided in Section IV, ¶¶ 5.1-5.2 herein.

       5.5     If for any reason any condition in Section IV, ¶ 6.1 is not met and the Effective Date of the Stipulation does not occur, if the Stipulation is in any way cancelled or terminated, or if the Judgment is reversed on appeal, then each of Plaintiffs' Counsel and their successors shall be obligated to repay to Defendants' insurers, within twenty (20) calendar days after written notification of such an event, the amount of the Fee and Expense Award paid by the Defendants' insurers that they received.  In the event of any failure to obtain final approval of the full amount of the Fee and Expense Award, or upon any appeal and/or further proceedings on remand, or successful collateral attack, which results in the Judgment or the Fee and Expense Award being overturned or substantially modified, each of Plaintiffs' Counsel and their successors shall be obligated to repay, within twenty (20) calendar days, the portion of the Fee and Expense Award paid by the Defendants' insurers that they received and that was ultimately not awarded to Plaintiffs' Counsel.

       5.6     Except as otherwise provided herein, each of the Parties shall bear his, her, or its own costs and attorneys' fees.

       5.7     In light of the substantial benefit Plaintiffs have helped to create for all Current IZEA Stockholders, Plaintiffs shall apply for Court-approved service awards in the amount of one thousand five hundred dollars ($1,500.00) each (the "Service Awards"), which the Defendants shall not object to.  The Service Awards to Plaintiffs, to the extent that they are approved, shall be funded from the Fee and Expense Award.

**6.   Conditions of Settlement, Effect of Disapproval, Cancellation, or Termination**

6.1     The Effective Date of the Stipulation shall be conditioned on the occurrence of all of the following events:

(i)      the entry of the Preliminary Approval Order;

(ii)     the Court's entry of the Judgment;

(iii)    the payment of the Fee and Expense Award in accordance with Section IV, ¶¶ 5.1-5.2 herein; and

(iv)    the Judgment has become Final.

6.2     If any of the conditions specified in Section IV, ¶ 6.1 are not met, then the Stipulation shall be cancelled and terminated subject to Section IV, ¶ 6.4, and the Plaintiffs and the Defendants shall be restored to their respective positions in the Derivative Actions as of the date immediately preceding the date of this Stipulation unless Plaintiffs' Counsel and Defendants' Counsel mutually agree in writing to proceed with the Stipulation.

6.3     Each of the Parties shall have the right to terminate the Settlement by providing written notice of their election to do so to all other Parties within twenty (20) calendar days of the date on which: (i) the Court refuses to approve this Stipulation, or the terms contained herein, in any material respect; (ii) the Preliminary Approval Order is not entered in substantially the form attached as Exhibit C hereto; (iii) the Judgment is not entered in substantially the form attached as Exhibit D hereto; (iv) the Judgment is reversed or substantially modified on appeal, reconsideration, or otherwise; (v) the payment of the Fee and Expense Award in accordance with Section IV, ¶¶ 5.1-5.3 herein is not made; or (vi) the Effective Date of the Settlement cannot otherwise occur; except that such termination shall not be effective unless and until the terminating Party has, within twenty (20) calendar days of the date on which notice of the termination event has been provided to all other Parties, attempted in good faith to confer with the

other Parties to attempt to remedy the issue. Any order or proceeding relating to the Fee and Expense Award, or any appeal from any order relating thereto or reversal or modification thereof, shall not operate to cancel the Stipulation, allow for the termination of the Settlement, or affect or delay the finality of the Judgment approving the Settlement.

6.4    In the event that the Stipulation is not approved by the Court, or the Settlement is terminated for any reason, including pursuant to Section IV, ¶ 6.3 above, the Plaintiffs and the Defendants shall be restored to their respective positions as of the date immediately preceding the date of this Stipulation, and all negotiations, proceedings, documents prepared and statements made in connection herewith shall be without prejudice to the Parties, shall not be deemed or construed to be an admission by any of the Parties of any act, matter, or proposition, and shall not be used in any manner for any purpose in any subsequent proceeding in the Derivative Actions or in any other action or proceeding. In such event, the terms and provisions of the Stipulation, with the exception of Section IV, ¶¶ 1.1-1.31, 5.5, 6.4, 8.5-8.21 herein, shall have no further force and effect with respect to the Parties and shall not be used in the Derivative Actions or in any other proceeding for any purpose, and any judgment or orders entered by the Court in accordance with the terms of the Stipulation shall be treated as vacated, *nunc pro tunc*.

## 7.  Bankruptcy

7.1    In the event any proceedings by or on behalf of IZEA, whether voluntary or involuntary, are initiated under any chapter of the United States Bankruptcy Code, including any act of receivership, asset seizure, or similar federal or state law action ("Bankruptcy Proceedings"), the Parties agree to use their reasonable best efforts to obtain all necessary orders, consents, releases, and approvals for effectuation of this Stipulation in a timely and expeditious manner.

7.2    In the event of any Bankruptcy Proceedings by or on behalf of IZEA, the Parties

agree that all dates and deadlines set forth herein will be extended for such periods of time as are necessary to obtain necessary orders, consents, releases and approvals from the bankruptcy court to carry out the terms and conditions of the Stipulation.

**8.   Miscellaneous Provision**

8.1     The Parties: (i) acknowledge that it is their intent to consummate this Stipulation; and (ii) agree to cooperate to the extent reasonably necessary to effectuate and implement all terms and conditions of the Stipulation and to exercise their best efforts to accomplish the foregoing terms and conditions of the Stipulation.  If any disputes arise out of the finalization of the Settlement itself, the Parties shall first meet and confer in an effort to resolve any disputes.  If any disputes remain, they will be resolved by the Mediator, first by way of expedited telephonic mediation and if unsuccessful, then by way of final, binding, non-appealable resolution.

8.2     Any planned, proposed or actual sale, merger or change-in-control of IZEA shall not void this Stipulation.  The Stipulation shall run to the Parties' respective successors-in-interest.  In the event of a planned, proposed or actual sale, merger or change-in-control of IZEA, the Parties shall continue to seek court approval of the Settlement expeditiously, including, but not limited to, the Settlement terms reflected in this Stipulation and the Fee and Expense Award.

8.3     The Parties agree that the terms of the Settlement were negotiated in good faith and at arm's-length by the Parties and reflect a settlement that was reached voluntarily based upon adequate information and after consultation with competent legal counsel.  The Parties shall not take the position that the litigation was brought or defended in bad faith.  The Parties and their respective counsel agree that, throughout the course of the litigation, all Parties and their counsel complied with Rule 11 of the Federal Rules of Civil Procedure and Rule 11 of Nevada Rules of Civil Procedure in connection with the maintenance, prosecution, defense, and settlement of the Derivative Actions and shall not make any application for sanctions, pursuant to Rule 11 or other

court rule or statute, with respect to any claim or defense in the Derivative Actions.

8.4     While maintaining their positions that the claims and defenses asserted in the Derivative Actions are meritorious, Plaintiffs and Plaintiffs' Counsel, on the one hand, and the Defendants and Defendants' Counsel, on the other, shall not make any public statements or statements to the media (whether or not for attribution) that disparage the Settlement or any of the others' business, conduct, or reputation, or that of their counsel, based on the subject matter of the Derivative Actions.  Notwithstanding the foregoing, each of the Parties reserves their right to rebut, in a manner that such Party determines to be reasonable and appropriate, any contention made in any public forum that the Derivative Actions were brought or defended in bad faith or without a reasonable basis.

8.5     Whether or not the Settlement is approved by the Court, and whether or not the Settlement is consummated, the fact and terms of this Stipulation, including any exhibits attached hereto, all proceedings in connection with the Settlement, and any act performed or document executed pursuant to or in furtherance of the Stipulation or the Settlement:

(a) shall not be offered, received, or used in any way against the Parties as evidence of, or be deemed to be evidence of, a presumption, concession, or admission by any of the Parties with respect to the truth of any fact alleged by Plaintiffs or the validity, or lack thereof, of any claim that has been or could have been asserted in the Derivative Actions or in any litigation, or the deficiency, infirmity, or validity of any defense that has been or could have been asserted in the Derivative Actions or in any litigation, or of any fault, wrongdoing, negligence, or liability of any of the Released Persons;

(b) shall not be offered, received, or used in any way against any of the Released Persons as evidence of, or be deemed to be evidence of, a presumption, concession, or admission of any

23

fault, misrepresentation or omission with respect to any statement or written document approved, issued, or made by any Released Person;

(c) shall not be offered, received, or used in any way against any of the Released Persons as evidence of, or be deemed to be evidence of, a presumption, concession, or admission of any liability, fault, negligence, omission or wrongdoing, or in any way referred to for any other reason as against the Released Persons, in any arbitration proceeding or other civil, criminal, or administrative action or proceeding in any court, administrative agency, or other tribunal; and

(d) shall not be offered, received, or used in any way against Plaintiffs or Plaintiffs' Counsel as evidence of, or be deemed to be evidence of, a presumption, concession, or admission that any of Plaintiffs' claims are without merit or that Plaintiffs would not have been able to prevail on their claims at trial.

8.6     Neither this Stipulation nor the Settlement, nor any act performed or document executed pursuant to or in furtherance of this Stipulation, or the Settlement, shall be admissible in any proceeding for any purpose, except to enforce the terms of the Settlement; provided, however, that the Released Persons may refer to the Settlement, and file the Stipulation and/or the Judgment, in any action that may be brought against them to effectuate the liability protections granted them hereunder, including, without limitation, to support a defense or claim based on principles of *res judicata*, collateral estoppel, full faith and credit, release, standing, good faith settlement, judgment bar or reduction or any other theory of claim preclusion or issue preclusion or similar defense or claim under U.S. federal or state law or foreign law.

8.7     The exhibits to the Stipulation are material and integral parts hereof and are fully incorporated herein by this reference.

8.8     The Stipulation may be amended or modified only by a written instrument signed by or on behalf of all the Parties or their respective successors-in-interest.  After prior notice to

the Court, but without further order of the Court, the Parties may agree to reasonable extensions of time to carry out any provisions of this Stipulation.

8.9     This Stipulation and the exhibits attached hereto represent the complete and final resolution of all disputes among the Parties with respect to the Derivative Actions, constitute the entire agreement among the Parties, and supersede any and all prior negotiations, discussions, agreements, or undertakings, whether oral or written, with respect to such matters.

8.10     The waiver by one Party of any breach of the Settlement by any other Party shall not be deemed a waiver of any other prior or subsequent breach of the Settlement.  The provisions of the Settlement may not be waived except by a writing signed by the affected Party, or counsel for that Party.

8.11     The headings in the Stipulation and its exhibits are used for the purpose of convenience only and are not meant to have legal effect.

8.12     The Stipulation and the Settlement shall be binding upon, and inure to the benefit of, the successors and assigns of the Parties and their Related Persons.

8.13     The Stipulation and the exhibits attached hereto shall be considered to have been negotiated, executed, and delivered, and to be wholly performed, in the State of California and the rights and obligations of the Parties to the Stipulation shall be construed and enforced in accordance with, and governed by, the internal, substantive laws of the State of California without giving effect to that State's choice of law principles.   No representations, warranties, or inducements have been made to any party concerning the Stipulation or its exhibits other than the representations, warranties, and covenants contained and memorialized in such documents.

8.14     This Stipulation shall not be construed more strictly against one Party than another merely by virtue of the fact that it, or any part of it, may have been prepared by counsel for one of

the Parties, it being recognized that it is the result of arm's-length negotiations among the Parties and all Parties have contributed substantially and materially to the preparation of this Stipulation.

8.15    All agreements made and orders entered during the course of the Derivative Actions relating to the confidentiality of information and documents shall survive this Stipulation.

8.16    Nothing in this Stipulation, or the negotiations or proceedings relating to the Settlement, is intended to or shall be deemed to constitute a waiver of any applicable privilege or immunity, including, without limitation, the attorney-client privilege, the joint defense privilege, the accountants' privilege, or work product immunity; further, all information and documents transmitted between Plaintiffs' Counsel and Defendants' Counsel in connection with the Settlement shall be kept confidential and shall be inadmissible in any proceeding in any U.S. federal or state court or other tribunal or otherwise, in accordance with Rule 408 of the Federal Rules of Evidence as if such Rule applied in all respects in any such proceeding or forum.

8.17    The Parties intend that the Court retain jurisdiction for the purpose of effectuating and enforcing the terms of the Settlement.

8.18    Any notice required by this Stipulation shall be submitted by overnight mail and e-mail to each of the signatories below.

8.19    The Stipulation may be executed in one or more counterparts, including by signature transmitted via facsimile, or by a .pdf/.tif image of the signature transmitted via e-mail. All executed counterparts and each of them shall be deemed to be one and the same instrument. A complete set of original executed counterparts shall be filed with the Court.

8.20    Each counsel or other person executing the Stipulation or its Exhibits on behalf of any party hereby warrants that such person has full authority to do so.

8.21    Plaintiffs each represent and warrant that he or she is a Current IZEA Stockholder and has not assigned any rights, claims, or causes of action that were asserted or could have been

asserted in connection with, under or arising out of any of the claims being asserted or released herein.

1    IN WITNESS WHEREOF, the Parties hereto have caused the Stipulation to be executed,

2    by their duly authorized attorneys, dated as of March 6, 2019.

3

4    Dated: March 6, 2019

By: */s/ Jon A. Tostrud*

5    Jon A. Tostrud

**TOSTRUD LAW GROUP, P.C.**

6    1925 Century Park East

Suite 2100

7    Los Angeles, CA 90067

Telephone: (310) 278-2600

8    Facsimile: (310) 278-2640

Email: jtostrud@tostrudlaw.com

9

10   *Local Counsel for Plaintiff Dennis E. Emond*

11   **GAINEY McKENNA & EGLESTON**

Gregory M. Egleston

12   Thomas J. McKenna

440 Park Avenue South, 5th Floor

13   New York, New York 10016

Tel: (212) 983-1300

14   Fax: (212) 983-0383

Email: tjmckenna@gme-law.com

15   Email: gegleston@gme-law.com

16

*Counsel for Plaintiff Dennis E. Emond*

17

18

19   Dated: March 6, 2019          **THE BROWN LAW FIRM, P.C.**

20
By: */s/ Timothy Brown*

21   Timothy Brown

240 Townsend Square

22   Oyster Bay, New York 11771

Telephone: (516) 922-5427

23   Facsimile: (516) 344-6204

Email: tbrown@thebrownlawfirm.net

24

25   *Counsel for Plaintiff Korene Stuart*

26   Patrick R. Leverty

**LEVERTY & ASSOCIATES LAW CHTD.**

Reno Gould House

27   832 Willow Street

Reno, NV 89502

28   Telephone: (775) 322-6636

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Facsimile: (775) 322-3953
Email: pat@levertylaw.com

*Local Counsel for Plaintiff Korene Stuart*

Dated: March 6, 2019

**K&L GATES LLP**

By: */s/ Daniel J. Stephenson*
Daniel J. Stephenson
10100 Santa Monica Boulevard, Eighth Floor
Los Angeles, California 90067
Telephone: (310) 552-5000
Facsimile: (310) 552-5001
Email: dan.stephenson@klgates.com

Nicole C. Mueller
70 West Madison Street, Suite 3300
Chicago, Illinois 60602
Telephone: (312) 807-4341
Facsimile: (312) 345-9976
Email: nicole.mueller@klgates.com

*Counsel for Defendants*